ORAL ARGUMENT NOT YET SCHEDULED

## Nos. 25-1159 (lead), 25-1160, 25-1162

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

PEOPLE OF THE STATE OF MICHIGAN,
*Petitioner*,

v.

UNITED STATES DEPARTMENT OF ENERGY AND CHRISTOPHER A. WRIGHT, SECRETARY, UNITED STATES DEPARTMENT OF ENERGY,
*Respondents*.

---

On Petitions for Review of Orders of the
Department of Energy

---

# BRIEF OF RESPONDENT-INTERVENOR
# CONSUMERS ENERGY COMPANY

---

Zachary C. Schauf
Juliana Brint
JENNER & BLOCK LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
zschauf@jenner.com

*Counsel for Consumers Energy Company*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), intervenor Consumers Energy Company files the following Certificate as to Parties, Rulings, and Related Cases:

**A.  Parties, Intervenors, and *Amici***

Except for the following, all parties, intervenors, and *amici* appearing in this Court are listed in the Initial Opening Brief for State Petitioners, Doc. 2151373 (filed Dec. 19, 2025):

- *Amici Curiae* Citizens Action Coalition of Indiana, Citizens Utility Board of Michigan, Citizens Utility Board of Minnesota, Citizens Utility Board of Wisconsin, and Consumers Council of Missouri.

- *Amici Curiae* Energy Law Scholars (Joshua C. Macey; Joel B. Eisen; Alison Gocke; Sharon B. Jacobs; Alexandra B. Klass; Andrew McKinley; Felix Mormann; David Owen; Shelley Welton; and Hannah Wiseman).

- *Amicus Curiae* Maryland Office of People's Counsel.

- *Amici Curiae* The Niskanen Center, Professor Paul L. Joskow, and Professor Richard Schmalensee.

- Consumers Energy Company is participating in this proceeding as an intervenor rather than an *amicus curiae*.

**B.    Rulings Under Review**

References to the rulings at issue appear in the Initial Opening Brief for State Petitioners, Doc. 2151373 (filed Dec. 19, 2025).

**C.    Related Cases**

Except for the following, all related cases are referenced in the Initial Opening Brief for State Petitioners, Doc. 2151373 (filed Dec. 19, 2025):

- Case No. 25-1254, pending in this Court and consolidated with Case Nos. 25-1198 and 25-1202, arises from a petition for review of the August 2025 renewal of the Department of Energy ("DOE") order at issue in this proceeding.

- Case Nos. 26-1024, 26-1025, and 26-1028, consolidated and pending in this Court, arise from petitions for review of the November 2025 renewal of the DOE order at issue in this proceeding.

- Case No. 26-1040, pending in this Court and consolidated with Case No. 25-1285, arises from a petition for review of orders issued by the Federal Energy Regulatory Commission in response to a complaint filed by Consumers Energy Company to allow for recovery of costs associated with the DOE order at issue in this proceeding.

/s/ *Zachary C. Schauf*
Zachary C. Schauf

# RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rules 15(c)(6) and 26.1 of the Circuit Rules of this Court, Consumers Energy Company submits the following corporate disclosure statement:

Consumers Energy Company is a Michigan corporation and a wholly owned subsidiary of CMS Energy Corporation ("CMS Energy"). CMS Energy is publicly traded. At the time of this statement, the Vanguard Group, Inc., and BlackRock Inc., each hold 10 percent or more of CMS Energy's stock. CMS Energy has no other parent corporations or publicly held corporations that own a 10% or greater ownership interest.

## CERTIFICATE AS TO NECESSITY OF SEPARATE BRIEF

Pursuant to D.C. Circuit Rule 28(d)(4), intervenor Consumers Energy Company ("Consumers") certifies that it cannot feasibly join a single brief with the other Respondent-Intervenor in this proceeding, the Midcontinent Independent System Operator, Inc. ("MISO"). Consumers' filing of a separate brief aligns with the Court's order granting Consumers' motion to intervene, which authorized Consumers to submit its own intervenor brief and accepted Consumers' proposal to limit its brief to 6,500 words (less than the standard 9,100-word limit for intervenor briefs). Order (Feb. 5, 2026); Consumers Mot. to Intervene at 3, 17 (filed Dec 26, 2025).

Consumers is the majority owner and operator of the Campbell Plant in West Olive, Michigan. MISO is a regional transmission organization covering portions of the Midwest region of the United States, as well as certain other regions. In the order at issue in this case, the U.S. Department of Energy ("DOE") directed Consumers and MISO to keep the Campbell Plant in operation beyond its planned retirement date. U.S. Dep't of Energy, Order No. 202-25-3 (May 23, 2025). Consumers duly complied with that order, incurring significant costs to do so. Consumers' brief in this proceeding focuses on protecting the company's right to recover the costs associated with DOE's order. As Consumers noted when it moved to intervene, MISO—which does not have a financial interest in the Campbell

Plant—does not share Consumers' distinct interest in cost recovery.  Consumers

Mot. to Intervene at 16-17 (filed Dec 26, 2025).  Consumers and MISO therefore

cannot feasibly join a single brief.

/s/ <em>Zachary C. Schauf</em><br>Zachary C. Schauf

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

RULE 26.1 DISCLOSURE STATEMENT............................................................. iii

CERTIFICATE AS TO NECESSITY OF SEPARATE BRIEF ............................iv

TABLE OF AUTHORITIES ............................................................................. vii

GLOSSARY....................................................................................................xi

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................1

BACKGROUND ............................................................................................3

      A.     Congress Divided Section 202(c) Authority Between DOE and FERC. ................................................................................3

      B.     The Campbell Plant Was Scheduled To Retire....................................5

      C.     DOE Has Ordered the Campbell Plant to Remain Operational, Which Some Parties Have Challenged. ................................................6

      D.     FERC Is Addressing the Recovery and Allocation of Consumers' DOE Order Costs.. ..........................................................7

ARGUMENT ...............................................................................................12

I.     Deciding Refund or Cost Recovery Issues in This Proceeding Would Conflict With Section 202(c)'s Division of Authority..................................13

II.    Petitioners' Refund Arguments in Any Event Are Not a Ground on Which the Court Should Find Non-Mootness. ...............................................15

III.   Consumers Is Entitled to "Just And Reasonable" Compensation for the Services it Provided, Even if the May DOE Order Is Later Set Aside. ...............................................................................................18

CONCLUSION .............................................................................................27

# TABLE OF AUTHORITIES[*]

**CASES**

*Ameren Services Co. v. FERC*, 893 F.3d 786 (D.C. Cir. 2018)...............................14

*Crowley Government Services, Inc. v. General Services Administration*, 143 F.4th 518 (D.C. Cir. 2025)......................................................................17

\* *Duquesne Light Co. v. Barasch*, 488 U.S. 299 (1989) ...................................20, 21

*Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998) ....................................................20

\* *Entergy Arkansas, LLC v. FERC*, 109 F.4th 583 (D.C. Cir. 2024) ......................14

*FAA v. Cooper*, 566 U.S. 284 (2012)....................................................................21

\* *Federal Power Commission v. Hope Natural Gas Co.*, 320 U.S. 591 (1944)..........................................................................................................20

\* *First English Evangelical Lutheran Church of Glendale v. Los Angeles County*, 482 U.S. 304 (1987) ..........................................................................21

*Garelick v. Sullivan*, 987 F.2d 913 (2d Cir. 1993) ................................................20

\* *Hecate Energy LLC v. FERC*, 126 F.4th 660 (D.C. Cir. 2025)...........................16

*Johnson v. Becerra*, 111 F.4th 1237 (D.C. Cir. 2024).............................................16

*Kennedy v. Braidwood Management, Inc.*, 606 U.S. 748 (2025)...........................22

\* *Knick v. Township of Scott*, 588 U.S. 180 (2019)..................................................21

\* *Michigan Bell Telephone Co. v. Engler*, 257 F.3d 587 (6th Cir. 2001) ..............22

*Mine Reclamation Corp. v. FERC*, 30 F.3d 1519 (D.C. Cir. 1994) ......................17

\* *National Institutes of Health v. American Public Health Ass'n*, 145 S. Ct. 2658 (2025)..................................................................................................26

---

[*] Authorities upon which we chiefly rely are marked with an asterisk.

*New England Power Generators Ass'n v. FERC*, 879 F.3d 1192 (D.C. Cir. 2018) .................................................................................................14

*NextEra Desert Center Blythe, LLC v. FERC*, 852 F.3d 1118 (D.C. Cir. 2017) .................................................................................................14

*Niagara Mohawk Power Corp. v. FERC*, 379 F.2d 153 (D.C. Cir. 1967) .............17

*Public Citizen, Inc. v. FERC*, 92 F.4th 1124 (D.C. Cir. 2024) ...............................16

*Road-Con, Inc. v. City of Philadelphia*, 120 F.4th 346 (3d Cir. 2024) ...................15

* *West Deptford Energy, LLC v. FERC*, 766 F.3d 10 (D.C. Cir. 2014) ...................27

*West v. Lynch*, 845 F.3d 1228 (D.C. Cir. 2017)......................................................16

*XO Energy MA, LP v. FERC*, 77 F.4th 710 (D.C. Cir. 2023)..................................14

CONSTITUTIONAL PROVISIONS AND STATUTES

* U.S. Const. amend. V...............................................................................................20

* 16 U.S.C. § 824a(c)................................................................................................19

* 16 U.S.C. § 824a(c)(1)...............................................................1, 3, 4, 18, 19, 22

* 16 U.S.C. § 824a(c)(5).............................................................................................23

16 U.S.C. § 824d(a) ..................................................................................................20

16 U.S.C. § 824e(b) ..................................................................................................20

* 16 U.S.C. § 825*l*........................................................................................................4

* 16 U.S.C. § 825*l*(a) .....................................................................................6, 14, 15

* 16 U.S.C. § 825*l*(b) ...........................................................................................4, 15

16 U.S.C. § 825*o*-1..................................................................................................23

42 U.S.C. § 7151(b) ...................................................................................................4

42 U.S.C. § 7172(a)(1)(B) .........................................................................................4

Department of Energy Organization Act, Pub. L. No. 95-91, 91 Stat. 565 (1977) (codified at 42 U.S.C. § 7101 *et seq.*)........................................................4

FAST Act, Pub. L. No. 114-94, Div. F, § 61002, 129 Stat. 1312, 1772 (2015)........................................................................................................23

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 113-86 (2013)........................................................................23

H.R. Rep. No. 114-357 (2014) (Conf. Rep.) ...............................................23

S. Rep. No. 74-621 (1935) ...........................................................................22

**ADMINISTRATIVE RULINGS**

*PJM Interconnection, L.L.C.*, 192 FERC ¶ 61,159 (2025), *on reh'g*, 193 FERC ¶ 61,229 (2025).................................................................................27

*Town of Massena v. Niagara Mohawk Power Corp.*, 8 FERC ¶ 61,199 (1979)........................................................................................................5

*U.S. Dep't of Energy*, 101 FERC ¶ 61,389 (2002) .....................................25

\* *U.S. Dep't of Energy*, 107 FERC ¶ 61,258 (2004) ...................................26

**OTHER AUTHORITIES**

\* 10 C.F.R. § 205.370 ...............................................................................4, 13

\* 10 C.F.R. § 205.376 ...............................................................................4, 13

*Affect*, *Merriam-Webster*, https://www.merriam-webster.com/thesaurus/affect#h1 (last visited Mar. 11, 2026) ................................................. 18-19

*Carry out*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/carry%20out (last visited Mar. 11, 2026).......................................19

Comments of Long Island Power Authority and LIPA to New York Independent System Operator and ISO-New England Joint Compliance Filing on Protocol for Emergency CSC Operation, *U.S. Dep't of Energy*, Docket No. ER03-246-000 (F.E.R.C. filed Feb. 28, 2003)................................25

*Compensation*, *Black's Law Dictionary* (12th ed. 2024) ...........................19

*Emergency Interconnection of Electric Facilities and the Transfer of Electricity to Alleviate an Emergency Shortage of Electric Power*, 46 Fed. Reg. 39,984 (DOE Aug. 6, 1981) ................................................................5

Joint Stipulation of Cross-Sound Cable Company, LLC and Long Island Lighting Company and LIPA Reflecting Agreement on Compensation Under Emergency Order, *U.S. Dep't of Energy*, Docket No. ER03-246-000 (F.E.R.C. filed May 6, 2004) .......................................................26

Order, *Michigan v. FERC*, Case No. 25-1285 (D.C. Cir. Jan. 26, 2026) .................11

*Reimbursement*, *Black's Law Dictionary* (12th ed. 2024).......................................19

*Take effect*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/take%20effect (last visited Mar. 11, 2026) .......................................19

Unopposed Motion of the People of the State of Mich. to Hold This Case in Abeyance, *Michigan v. FERC*, Case No. 25-1285 (D.C. Cir. Jan. 9, 2026) .......................................................................................10, 11, 15

# GLOSSARY

| | |
|---|---|
| Consumers | Respondent-Intervenor Consumers Energy Co. |
| CSC | Cross-Sound Cable Company, LLC |
| DOE | Department of Energy |
| FERC | Federal Energy Regulatory Commission |
| FPA | Federal Power Act |
| MISO | Midcontinent Independent System Operator, Inc. |
| MPSC | Michigan Public Service Commission |

## INTRODUCTION AND SUMMARY OF ARGUMENT

Respondent-Intervenor Consumers Energy Company ("Consumers") is the majority owner of the J.H. Campbell generation facility (the "Campbell Plant").[1] It submits this brief for a simple purpose: As this Court resolves the mootness question it posed—and, if it reaches the merits, addresses the legality of the order issued by the Department of Energy ("DOE")—the Court should respect Congress's careful division of authority under Section 202(c) of the Federal Power Act ("FPA"). Pursuant to that division, DOE has statutory authority to find emergencies and require plants to remain operational, but the Federal Energy Regulatory Commission ("FERC") is responsible for ensuring that "just and reasonable[] … compensation or reimbursement" is available to parties "carrying out" a Section 202(c) Order. 16 U.S.C. § 824a(c)(1). Because only DOE's action is at issue here, the Court should avoid passing judgment on cost issues not properly before it in this proceeding.

Consumers duly complied with DOE's order requiring the plant to remain operational. Consumers incurred substantial costs to do so, and FERC determined it is just and reasonable to allocate costs associated with the DOE order to customers throughout the Midcontinent Independent System Operator, Inc. ("MISO") region. Meanwhile, Petitioners challenged DOE's order. But they never sought emergency

---

[1] Wolverine Power Supply Cooperative, Inc. and the Michigan Public Power Agency own, respectively, 1.89% and 4.80% interests in one of the Campbell Plant's three generating units.

relief from this Court, and the order has expired. Certain Petitioners have nonetheless sought to avoid mootness by arguing that if the DOE order is invalidated, Consumers could be required to "refund … costs charged" for Campbell's continuing operation.

This brief makes three points on that discrete issue. Consumers takes no position on whether DOE's order is lawful or whether this case is moot (though Consumers *does* have a view on certain of Petitioners' non-mootness arguments).

First, the Court cannot find non-mootness on the theory that customers *would be* entitled to refunds through FERC if DOE's order is invalidated. Compensation-related issues are subject to FERC's exclusive jurisdiction, and no FERC order is before the Court in this proceeding.

Second, Petitioners' refund theory is in all events *too speculative* to support justiciability. Vacatur would not automatically yield refunds. Even if refunds were potentially available (they are not), they would require discretionary action by FERC. Petitioners cannot carry the exceptionally heavy burden that applies when redressability or non-mootness is based on speculation about actions of third parties.

Third, Petitioners' refund arguments are wrong on the merits, and Petitioners will not be entitled to refunds even if the DOE order is vacated (though, again, that question is not properly before this Court). Consumers complied with DOE's order while it was in effect. By statute, the Campbell Plant's owners are entitled to "just

2

and reasonable[] … compensation or reimbursement" for the roughly $42 million in net costs associated with "carrying out" that order. 16 U.S.C. § 824a(c)(1). Petitioners' refund arguments, by contrast, contradict that statutory text. They would turn Section 202(c) into an instrument for unconstitutional takings. And they would yield perverse incentives Congress could not have intended—punishing affected owners for following DOE's orders, providing a windfall to energy customers who would receive access to resources without paying, and encouraging needless challenges by customers simply to avoid cost responsibility.

Cost recovery disputes will continue before FERC and on appeal from FERC's orders. Consumers respectfully asks that the Court avoid unintended consequences for those separate proceedings, including making clear that any decision here does not assume the availability of refunds or otherwise affect FERC's decision-making in those separate proceedings.

## BACKGROUND

### A.    Congress Divided Section 202(c) Authority Between DOE and FERC.

Congress via Section 202(c) conferred on the federal government authority to address grid emergencies. 16 U.S.C. § 824a(c)(1). And as Congress has addressed Section 202(c) over time, it has precisely divided authority between DOE and FERC.

When Congress in 1977 abolished the Federal Power Commission, Congress moved *to DOE* the authority to decide whether an emergency exists and to require

3

"such temporary connections of facilities and such generation, delivery, interchange, or transmission of electric energy as in its judgment will best meet the emergency and serve the public interest." 16 U.S.C. § 824a(c)(1).[2] If parties disagree, they may seek rehearing from DOE, 16 U.S.C. § 825*l*(a), then judicial review, *id*. § 825*l*(b).

Congress transferred *to FERC* the Federal Power Commission's authority over "establishment, review, and enforcement of rates and charges for the transmission or sale of electric energy[] … under part II of the Federal Power Act…." 42 U.S.C. § 7172(a)(1)(B). This includes rate-related authority under Section 202(c). If parties to a Section 202(c) order fail to agree on rate-related terms, FERC may "prescribe by supplemental order such terms as it finds to be just and reasonable, including the compensation or reimbursement which should be paid." 16 U.S.C. § 824a(c)(1). If parties are dissatisfied, they can seek rehearing before FERC and then judicial review. *See* 16 U.S.C. § 825*l*.

DOE's regulations implement Congress's division. *See* 10 C.F.R. § 205.370 (specifying that "the DOE has the authority to order the temporary connection of facilities, or the generation or delivery of electricity, which it deems necessary to alleviate an emergency"); *id*. § 205.376 (explaining that if the "entities" subject to a DOE Section 202(c) order "are unable to agree on the rates to be charged, the DOE

---

[2] DOE Organization Act, Pub. L. No. 95-91, 91 Stat. 565 (1977) (codified at 42 U.S.C. § 7101 *et seq*.); *see* 42 U.S.C. § 7151(b).

shall prescribe the conditions of service and refer the rate issues to [FERC] for determination by that agency in accordance with its standards and procedures").

In promulgating those regulations, DOE explained that "specific allocation of costs was not included in the regulations since this responsibility is vested in the Federal Energy Regulatory Commission (FERC) and must be addressed by its regulations." *Emergency Interconnection of Elec. Facilities & the Transfer of Elec. To Alleviate an Emergency Shortage of Elec. Power*, 46 Fed. Reg. 39,984, 39,985 (DOE Aug. 6, 1981); *see* JA__ (DOE Order on Rehearing at PP 68-69). FERC has similarly acknowledged the congressionally mandated division of authority under FPA Section 202(c), explaining that DOE "has authority with respect to the ordering of emergency [sales and service]" and, when DOE exercises such authority, "this Commission would set the rates and charges for such sales and service." *Town of Massena v. Niagara Mohawk Power Corp.*, 8 FERC ¶ 61,199, at 61,699 (1979); *see* JA__, __, __ (FERC Order on Rehearing at PP 31, 37, 42).

## B.    The Campbell Plant Was Scheduled to Retire.

Consumers is the majority owner of the Campbell Plant, a three-unit, coal-fired power plant in West Olive, Michigan. The plant is located within the footprint of MISO, which operates the electric transmission system and administers wholesale power markets in 15 midwestern and southern states, including Michigan.

The Campbell Plant was scheduled to retire on May 31, 2025, as part of the integrated resource plan Consumers filed with the Michigan Public Service Commission ("MPSC") in 2021 and a settlement the MPSC approved in 2022. *See* JA__ (Consumers Complaint at 7-8 & nn.13-14). Consumers in 2021 notified MISO of its intent to retire the Campbell Plant. MISO studied the proposed retirement and approved it in 2022. *See* JA__-__ (Michigan AG Request for Rehearing, Attach. C).

### C.    DOE Has Ordered the Campbell Plant to Remain Operational, Which Some Parties Have Challenged.

On May 23, 2025, DOE issued an order under Section 202(c) declaring that "an emergency exists in portions of the Midwest region." JA__ (May DOE Order at 1). DOE directed Consumers and MISO to "take all measures necessary to ensure that the Campbell Plant is available." JA__ (*id*. at 2). The order observed that "[r]ate recovery is available pursuant to [Section 202(c)]" and directed Consumers to "file with [FERC] Tariff revisions or waivers necessary." JA__ (*id*. at 3).

Nearly a month later, on June 18 and June 23, several parties challenged the May DOE Order and petitioned DOE for rehearing and a stay. Those petitions were denied by operation of law 30 days later, 16 U.S.C. § 825*l*(a), and on July 28, 2025, DOE issued a notice observing as much. Meanwhile, the challengers filed petitions for review in this Court, which were consolidated. Petitioners never, however, sought emergency relief from this Court.

6

DOE on August 20, 2025 issued a new order to keep the Campbell Plant available through November 18, 2025. JA__-__ (August DOE Order). Petitions for review of the August DOE Order are pending in separate proceedings. Case Nos. 25-1198, 25-1202, and 25-1254. On November 18, 2025, DOE issued another order to maintain the Campbell Plant's availability through February 16, 2026. JA__-__ (November DOE Order). Petitions for review of the November DOE Order also are pending in separate proceedings. Case Nos. 26-1024, 26-1025, and 26-1028. On February 17, 2026, DOE issued another order to maintain the Campbell Plant's availability through May 18, 2026. JA__-__ (February DOE Order).

On September 8, 2025, DOE issued an order addressing arguments raised on rehearing. JA__-__ (DOE Order on Rehearing). DOE explained that cost-allocation and cost recovery issues are being addressed by FERC, "as contemplated by section 202(c) and DOE's implementing regulations." JA__ (*id*. at PP 68-69). (We call all DOE's orders and rehearing orders collectively the "DOE Orders.")

**D.    FERC Is Addressing the Recovery and Allocation of Consumers' DOE Order Costs.**

Consumers has duly complied with the DOE Orders, and the Campbell Plant has been offered into the MISO market and produces energy when dispatched. Costs are associated with doing so. Those costs include (among others) fuel procurement, operations and maintenance, and fixed costs. Today, three FERC proceedings are

moving forward regarding recovery and allocation of costs associated with the DOE Orders.  Below, we describe each.

*1. Consumers Complaint.*  MISO and Consumers agreed MISO's tariff did not include a mechanism for the recovery and allocation of Consumers' costs. Consumers on June 6, 2025 thus filed a complaint asking FERC to use its Section 202(c) authority to order MISO to add a rate schedule that allows Consumers to recover the costs associated with the DOE Orders "*net of market revenues*."  JA__ (Consumers Complaint at 12).  Consumers explained that it planned to make a separate filing with FERC after the conclusion of the May DOE Order to address recovery of specific costs.  JA__ (*id.* at 2).  Consumers also proposed allocating costs proportionally to all customers in MISO's northern and central regions.  JA__-__ (*id.* at 5-6).

Separately, DOE sent a letter to FERC explaining that "MISO and Consumers have not been able to reach agreement on the rate issues relating to" the May DOE Order.  JA__ (DOE Referral at 2).  DOE therefore referred "only the rate issues to the Commission pursuant to 10 C.F.R. § 205.376."  *Id.*  FERC acknowledged this referral and provided "notice of the Commission's intent to take further action in appropriate proceedings to address the corresponding rate issues."  JA__ (FERC Order on Referral at P 1).

Many parties agreed with, or did not oppose, Consumers' proposed approach entirely or in large part, including MISO. *See* JA__-__ (Consumers Answer at 2-3). Some parties, however, disagreed with aspects of Consumers' position. Some parties contested only cost-allocation; others asked FERC to deny the complaint entirely or to defer action pending challenges to the May DOE Order. *See* JA__ (*id.* at 3 nn.11-12) (summarizing parties' arguments).

On August 15, 2025, FERC granted Consumers' complaint and directed MISO to make a compliance filing to adopt the regional cost allocation mechanism Consumers had proposed, with a clarification regarding the specific allocation methodology. JA__, __, __-__ (FERC Order on Complaint at PP 2, 35, 38-40). FERC also dismissed arguments that cost recovery may not be warranted if the May DOE Order is set aside, finding such arguments beyond the scope of that proceeding. JA__ (*id*. at P 42).

Four timely requests for rehearing were filed. Two sought to preserve arguments about whether Consumers' compliance costs should be recoverable if the May DOE Order is vacated. *See* JA__-__ (Michigan FERC Rehearing Request at 2-6); JA__-__ (Public Interest Organizations FERC Rehearing Request at 7-8). Consumers submitted an answer underscoring that it "has a right—pursuant to the May DOE Order, the FPA, and the U.S. Constitution—to recover all costs it incurs

9

to comply with the May DOE order (net of its market revenue)." JA__ (Consumers Answer to Rehearing Requests at 1).

On December 22, 2025, the Commission issued an order addressing rehearing requests. FERC continued to find that arguments regarding the May DOE Order's validity were outside of scope: "Under the DOE Organization Act, the determination of the need for the operation of the Campbell Plant rests solely with DOE; the Commission's responsibility is to provide for 'compensation or reimbursement' of the costs of operation." JA__ (FERC Order on Rehearing at P 31) (quoting 16 U.S.C. § 824a(c)); *see* JA__, __ (*id.* at PP 37, 42). FERC rejected stay requests, finding the requesting parties had not demonstrated irreparable harm that "could not otherwise be relieved …, including through refunds, if warranted." JA__ (*id*. at P 45).

Michigan and other parties have petitioned for review of the FERC orders on Consumers' complaint. Case Nos. 25-1285, 26-1040 (consolidated). On January 9, 2026, Michigan asked the Court to hold that case in abeyance pending resolution of this proceeding. Unopposed Mot. of the People of the State of Mich. to Hold This Case in Abeyance, *Michigan v. FERC*, Case No. 25-1285 (D.C. Cir. Jan. 9, 2026) ("Michigan Abeyance Motion"). The motion stated that "[i]f this Court does vacate the DOE Order, Michigan will then seek such relief from FERC, which might result in a revision to the FERC Order or a new FERC order to address the same subject

10

matter." *Id*. at 4-5.  The Court granted that motion.  Order, *Michigan v. FERC*, Case No. 25-1285 (D.C. Cir. Jan. 26, 2026).

**2. *MISO Compliance Filing.***  MISO on September 15, 2025 submitted a FERC compliance filing to adopt a new tariff provision along the lines proposed in Consumers' complaint.  MISO Compliance Filing.  Two protests and one comment requesting clarification were submitted, with a group of public interest organizations again challenging the lawfulness of allocating costs to MISO customers based on the May DOE Order.  *See* JA__, __-__ (FERC Order on MISO Compliance Filing at PP 12, 21-23).  MISO and Consumers submitted answers.  *See* JA__, __-__ (*id.* at PP 13, 24-35).  On March 3, 2026, FERC rejected MISO's compliance filing based on concerns about the specific methodology MISO proposed to use for allocating costs among market participants.  JA__-__ (*Id.* at PP 43-48).  FERC directed MISO to submit a new compliance filing with a revised allocation methodology by April 2, 2026.  JA__ (*id*. at P 49).

**3. *Consumers' Cost Recovery Filing.***  While FERC's order on Consumers' complaint approved a "cost allocation methodology," FERC stated that Consumers would need to "petition the Commission in a separate proceeding … for approval to recover specific DOE [o]rder [c]osts."  JA__ (FERC Order on Complaint at P 42).  Consumers submitted this filing in early 2026, seeking FERC approval to recover $42.372 million in costs (net of MISO revenues) associated with compliance with

the May DOE Order. *See* JA__-__ (Corrected Consumers Cost Recovery Filing). While the MPSC filed comments supporting Consumers' filing, other parties have challenged it. *See, e.g.*, JA__-__ (MPSC Comments); JA__-__ (Michigan Protest); JA__-__ (South Dakota Public Utilities Commission Comments); JA__-__ (Public Interest Organizations Protest). Some challenges relate to specific cost elements or the overall cost allocation approach; others contest Consumers' right to recover *any* costs before the legality of the May DOE Order has been fully litigated. Consumers responded to these filings on March 12, 2026. JA__-__ (Consumers Answer on Cost Recovery Filing). FERC has not yet ruled on Consumers' cost recovery filing.

## ARGUMENT

Consumers takes no position on whether the May DOE Order is lawful or these appeals are moot. Consumers does, however, have a powerful interest in one issue: Preserving its ability to recover costs associated with the May DOE Order while respecting Congress's allocation of authority over that question. The States' brief could be read to argue non-mootness on the theory that "[v]acatur" would—on its own—require a "refund … to … ratepayers." States Br. 23; *see id.* (Order's "legal validity … will determine who bears its costs"); *cf.* PIOs Br. 21 (vacatur "would reduce the risk [Petitioners] will pay those costs.").

For three reasons, the Court should not find these appeals non-moot on the theory that vacatur would require refunds. First, using these appeals of a *DOE* order

12

to decide refund or other cost recovery issues—which are subject to *FERC*'s separate and exclusive jurisdiction—would conflict with Congress's bifurcation of authority. Second, even if refunds could lawfully issue (which they cannot), Petitioners' speculative refund arguments in any event are not a sound basis to find non-mootness. Third, Petitioners' refund arguments are wrong. Consumers is entitled to recover costs associated with the May DOE Order, even if that order ultimately is set aside.

## I.   Deciding Refund or Cost Recovery Issues in This Proceeding Would Conflict With Section 202(c)'s Division of Authority.

To the extent Petitioners ask this Court to find non-mootness on the ground that vacatur *would necessarily* require refunds, the Court cannot endorse that argument without trampling on Section 202(c)'s division of authority. As explained, Section 202(c) carefully apportions responsibility between DOE and FERC. *Supra* Background Part A. And here, the process is playing out as Congress provided: DOE issued an order directing the Campbell Plant's continued operation to address the emergency DOE found, and FERC through separate proceedings is addressing cost recovery and allocation. *Supra* Background Parts C-D; *see, e.g.*, 10 C.F.R. §§ 205.370, 205.376; JA__ (DOE Referral at 2); JA__ (DOE Order on Rehearing at PP 68-69); JA__ (FERC Order on Rehearing at P 31) ("Under the DOE Organization Act, the determination of the need for the operation of the Campbell Plant rests solely

13

with DOE; the Commission's responsibility is to provide for 'compensation or reimbursement' of the costs of operation." (quoting 16 U.S.C. § 824a(c)).

The Court in these appeals cannot decide whether refunds would issue if the May DOE Order is vacated. Congress allocated rate-related issues to FERC, based on FERC's deep expertise in such matters.[3] To safeguard FERC's authority, Congress then imposed an "unusually strict" and "jurisdictional" exhaustion requirement that forbids judicial intervention unless and until the challenger has urged its objections before FERC in a request for rehearing and 30 days elapse. *Entergy Ark., LLC v. FERC*, 109 F.4th 583, 590 (D.C. Cir. 2024) (internal quotation marks omitted); *see* 16 U.S.C. § 825*l*(a); *accord Ameren Servs. Co. v. FERC*, 893 F.3d 786, 793 (D.C. Cir. 2018); *New England Power Generators Ass'n v. FERC*, 879 F.3d 1192, 1198 (D.C. Cir. 2018). A challenger must then file a petition for review that satisfies the requirements of FPA Section 313(b).

These requirements have only been fully satisfied for one of the three FERC proceedings related to the May DOE Order—the Consumers' complaint proceeding. And while FERC's orders there are pending in separate appeals, they have been held in abeyance based on Michigan's representation that it will "seek [refunds or other]

---

[3] *E.g.*, *NextEra Desert Ctr. Blythe, LLC v. FERC*, 852 F.3d 1118, 1122–23 (D.C. Cir. 2017) ("Congress explicitly delegated to FERC broad powers over ratemaking" (quotation marks omitted)); *see XO Energy MA, LP v. FERC*, 77 F.4th 710, 716 (D.C. Cir. 2023) (rate-related matters "lie at the core of the regulatory mission" (quotation marks omitted)).

relief *from FERC*' if the May DOE Order is vacated.  Michigan Abeyance Motion at 4-5 (emphasis added).  More: FERC has not yet filed the record with this Court.  Until then, FERC still has jurisdiction and may "modify or set aside, in whole or in part, any finding or order" in the complaint proceeding.  16 U.S.C. § 825*l*(a), (b).  And FERC has not yet issued *any* order on Consumers' cost recovery proposal.  A litigant in *this case* could *not* ask this Court to prevent FERC from completing the cost recovery proceedings still before it in which refund arguments have been raised.

Given Section 202(c)'s bifurcated scheme, it would be improper for this Court in these appeals of *DOE*'s order to decide issues (such as the legality and propriety of refunds) that would come before an appellate court (if at all) only via separate appeals from a *FERC* decision addressing cost recovery.  The Court should make clear that any decision it issues does not reach the issue of whether Petitioners are entitled to refunds if the May DOE Order is invalidated.

## II.    Petitioners' Refund Arguments in Any Event Are Not a Ground on Which the Court Should Find Non-Mootness.

Petitioners' refund arguments also would be a particularly strained and problematic ground on which to find this case justiciable.

Even before reaching mootness, it is doubtful whether Petitioners ever had *standing* to press those arguments in these appeals.  Both standing and mootness "turn[] on the relief sought."  *Rd.-Con, Inc. v. City of Philadelphia*, 120 F.4th 346, 356 (3d Cir. 2024).  DOE, the defendant here, has no authority to order refunds; only

15

FERC even possibly could. And when challengers sue one defendant to change another party's behavior, they face "a significant barrier." *Johnson v. Becerra*, 111 F.4th 1237, 1244 (D.C. Cir. 2024). They must show redressability is "likely," *West v. Lynch*, 845 F.3d 1228, 1235 (D.C. Cir. 2017), and there must be "little doubt as to ... the likelihood of redress." *Hecate Energy LLC v. FERC*, 126 F.4th 660, 665–66 (D.C. Cir. 2025) (internal quotation marks omitted). If it is "instead 'just as plausible' that the court's action will not redress the plaintiff's injury as that it will, Article III's redressability requirement is not met." *Id.* (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 43-46 (1976)). Hence, "'standing theories that require guesswork as to how independent decisionmakers will exercise their judgment' do not suffice." *Id.* (quoting *Murthy v. Missouri*, 603 U.S. 43, 57-58 (2024)). Meanwhile, "[a] case is moot if a decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Pub. Citizen, Inc. v. FERC*, 92 F.4th 1124, 1128 (D.C. Cir. 2024) (internal quotation marks omitted).

Here, Petitioners' refund arguments do not suffice for justiciability. Even were this Court to vacate the May DOE Order, for refunds to issue (1) FERC would need to determine that it has legal authority to order refunds, (2) FERC would need to decide to exercise its remedial discretion to do so, and (3) that decision would need to withstand judicial review. Each step in this process is entirely speculative.

16

Neither FERC nor any court has ever determined that FERC has authority to deny cost recovery or order refunds simply because a DOE order under Section 202(c) is ultimately set aside—and in fact, FERC lacks authority to do so. *Infra* Part III. And even if that authority existed, this Court has observed that FERC's discretion is "at zenith" when the agency is "fashioning … remedies," *Niagara Mohawk Power Corp. v. FERC*, 379 F.2d 153, 159 (D.C. Cir. 1967). This is thus not a case where prevailing would give Petitioners a *right* to refunds from FERC. Quite the opposite: Imagining a scenario in which refunds would issue requires so much guesswork and speculation that it does not establish redressability, much less avoid mootness.[4]

Meanwhile, Petitioners have raised several other non-mootness arguments, including the capable-of-repetition-but-evading-review exception. States Br. at 24-25; PIO Br. at 47-49. While Consumers takes no position on those arguments, Consumers will note this: Those arguments do not implicate Section 202(c)'s division of authority or the guesswork of Petitioners' refund-based arguments. In no event, moreover, should the Court go farther than observing that FERC has allowed parties to preserve refund arguments.

---

[4] The decision in *Crowley Government Services, Inc. v. General Services Administration*, 143 F.4th 518, 526 (D.C. Cir. 2025), cited by the States, is doubly irrelevant: Standing there was uncontested, and the "parallel action" there was a suit in the Court of Federal Claims—not a decision made by an independent Executive Branch agency. Even farther afield is *Mine Reclamation Corp. v. FERC*, 30 F.3d 1519, 1523 (D.C. Cir. 1994), where the appeal was not moot because it would *definitively determine* an issue in parallel proceedings.

**III.    Consumers Is Entitled to "Just And Reasonable" Compensation for the Services it Provided, Even if the May DOE Order Is Later Set Aside.**

Were another reason needed to avoid reliance on Petitioners' refund arguments, it is this: Those arguments are wrong, and if FERC ultimately needs to address them, they will fail.  When an owner duly complies with a Section 202(c) order to address a DOE-designated emergency, it is entitled to compensation.  And that remains true even if the Section 202(c) order is later set aside.  Text, context, history, and common sense all confirm as much.

A. The text rebels against Petitioners' claim that owners lose their entitlement to compensation just because a Section 202(c) order is later set aside.  Congress specified that if parties are "affected by" and are "carrying out" a Section 202(c) order and cannot agree on compensation, FERC "either before or after such order takes effect" may "prescribe … such terms as it finds to be just and reasonable, including … compensation or reimbursement."  16 U.S.C. § 824a(c)(1).  All that matters to this authority is whether DOE has issued an order yielding costs.  And no part of this authority depends on whether the order is ultimately vacated.  Meanwhile, Congress never authorized refunds when orders are set aside (and for good reason, because even vacated orders impose real costs).

Start with the key predicates to FERC's authority—that parties have been "affected by" an order and incurred costs in "carrying out" that order.  A party is "affected [by]" an order when the order has "act[ed] upon" that party.  *Affect*,

*Merriam-Webster*, https://www.merriam-webster.com/thesaurus/affect#h1 (last visited Mar. 11, 2026). And to "carry out" is "to put into execution." *Carry out*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/carry%20out (last visited Mar. 11, 2026). The May DOE Order "acted upon" Consumers, which has put that order "into execution." And all of that remains true even if the order is later invalidated.

Now consider Section 202(c)'s timing provision, which authorizes FERC to act on compensation disputes "either before or after" an order "takes effect." 16 U.S.C. § 824a(c)(1). To "take effect" is to "become operative." *Take effect*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/take%20effect (last visited Mar. 11, 2026). And again, DOE's order has become operative whether or not it is ultimately sustained. Congress did not limit FERC's authority to provide compensation to orders that are *currently* in effect or ultimately deemed lawful.

Finally, focus on what Section 202(c) authorizes FERC to do—provide "compensation" or "reimbursement," in amounts FERC determines are "just and reasonable." 16 U.S.C. § 824a(c). Compensation is "[r]emuneration and other benefits received in return for services rendered." *Compensation*, *Black's Law Dictionary* (12th ed. 2024). Reimbursement is "paying back a sum of money." *Reimbursement*, *Black's Law Dictionary* (12th ed. 2024). Section 202(c) thus entitles owners to payment for services and recovery of associated expenses. In

19

particular, to carry out the May DOE Order, Consumers "rendered" services and expended "sum[s] of money." And yet again, that remains just as true whether or not the DOE Orders ultimately are set aside.

The phrase "just and reasonable" is particularly important. It invokes the FPA's watchword for amounts sufficient to compensate owners of property dedicated to public service.[5] This standard protects via statute the bedrock Takings Clause principle that a utility whose property is used to serve the public is entitled to recovery of costs plus a reasonable rate of return. U.S. Const. amend. V; *see Fed. Power Comm'n v. Hope Nat. Gas Co.*, 320 U.S. 591, 603 (1944). This general principle applies whenever a utility has a "statutory duty to serve the public" and its "assets are employed in the public interest to provide customers … with electric power." *Duquesne Light Co. v. Barasch*, 488 U.S. 299, 308 (1989); *Garelick v. Sullivan*, 987 F.2d 913, 916 (2d Cir. 1993). The need for just compensation is even more clear-cut where, as here, the government expressly compels a private company to use a *specific* asset to provide particular services to the public. *Cf. E. Enters. v. Apfel*, 524 U.S. 498, 543 (1998) (Kennedy, J., concurring in the judgment and dissenting in part) (in takings cases, the Court has "asked how the challenged

---

[5] *E.g.*, 16 U.S.C. § 824d(a) (requiring utility rates be "just and reasonable"); *id.* § 824e(b) (authorizing FERC to remedy unjust and unreasonable rates and impose just and reasonable rates).

governmental action is implemented with particular emphasis on the extent to which a specific property right is affected").

Key here, this FPA-protected just-compensation requirement also contains a timing rule: A "property owner acquires an *irrevocable* right to just compensation *immediately* upon a taking." *Knick v. Twp. of Scott*, 588 U.S. 180, 192 (2019) (emphasis added). And "*no subsequent action* by the government can relieve it of the duty to provide compensation." *First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cnty.*, 482 U.S. 304, 321 (1987). So again: When Congress provided for "just and reasonable" compensation, this promise does not simply evaporate if an order is ultimately set aside.

Nor is there anything to the argument, which the States pressed before FERC, that this constitutional duty is irrelevant because Consumers could try to bring a Takings Claim against the United States in the Court of Federal Claims. To begin, when Congress empowered the Federal Power Commission (now FERC) to provide compensation, the *whole point* was to avoid the need for takings litigation, and the FPA's statutory standard protects at least the constitutional minimum: "By long standing usage in the field of rate regulation, the 'lowest reasonable rate' is one which is not confiscatory in the constitutional sense." *Duquesne Light*, 488 U.S. at 308 (quotation marks omitted). Section 202(c)'s "just and reasonable" standard incorporates this settled understanding. *FAA v. Cooper*, 566 U.S. 284, 292 (2012)

21

("[W]hen Congress employs a term of art, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word …." (internal quotation marks omitted)).  Moreover, an interpretation that would deprive Consumers of a mechanism "through which [it] may challenge the imposition of rates which may be confiscatory" and obtain "timely relief" would also run afoul of the Due Process Clause.  *Mich. Bell Tel. Co. v. Engler*, 257 F.3d 587, 593-94 (6th Cir. 2001).  The canon of constitutional avoidance requires reading statutes to avoid rather than create constitutional problems—including the constitutional problems that would follow from forcing owners to operate and then relegating them to uncertain, years-long litigation in the Court of Federal Claims.  *E.g.*, *Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 775-76 (2025).

B. Context and purpose teach the same lesson.  Section 202(c) is about addressing "emergencies," where the need may be so urgent that Congress empowered DOE to act "without notice, hearing, or report" and adopt such measures as in "its judgment will best meet the emergency and serve the public interest." 16 U.S.C. § 824a(c)(1); *see* S. Rep. No. 74-621 at 49 (1935) ("[Emergency] conditions should find a Federal agency ready to do all that can be done in order to prevent a break-down in electric supply.").  It is inconceivable that the Congress that conferred this broad emergency authority *also* intended to place affected owners in the bind that Petitioners would create: Comply and risk forfeiting the compliance costs if the

22

order is set aside, or decline and fail to meet the emergency—while also risking government enforcement action. *See* 16 U.S.C. § 825*o*-1. Such dilemmas have no place in emergencies, where decisive action is paramount.

Section 202(c)'s environmental-immunity provisions prove the point. Congress added those provisions after a controversy over whether two specific Section 202(c) orders authorized power plants to operate in violation of environmental limits. *See* FAST Act, Pub. L. No. 114-94, Div. F, § 61002, 129 Stat. 1312, 1772 (2015); H.R. Rep. No. 113-86 at 4-5 (2013). So determined was Congress to ensure that owners would without hesitation comply with Section 202(c) orders that it provided for environmental immunity and expressly specified that such immunity continues even if the underlying orders are set aside. 16 U.S.C. § 824a(c)(5); *see* H.R. Rep. No. 114-357 at 542 (2014) (Conf. Rep.) (explaining the new provisions address concerns about generation owners being "forced to choose between complying with an emergency order from DOE under [Section 202(c)] or violating an obligation imposed by environmental laws or regulations," a conflict "that could threaten ... reliability"). No rational Congress would have intended to confer this protection while leaving utilities exposed to the risk of losing cost recovery entirely—a risk that could be at least as chilling.

Nor is it any answer to say that this environmental immunity *expressly* applies even when an order is set aside. First, Section 202(c) is just as explicit about cost

recovery, albeit via a different mechanism: It specifically provides for compensation, without anywhere providing for refunds. *Supra* at 18. Second, the environmental-immunity provisions naturally were double-clear because they addressed specific controversies—controversies resulting from genuine ambiguities under the pre-amendment statute. Did Section 202(c) displace federal environmental laws? And did Congress authorize DOE to preempt state environmental laws? Answering those questions would have required courts to apply indeterminate and often conflicting interpretive principles, including "the specific governs the general," the later-in-time rule, and the presumption against preemption. Those ambiguities, moreover, would compound when an order was set aside. So when Congress added express immunity provisions, it understandably was explicit about vacatur's effect. As to cost recovery, however, no similar displacement or preemption questions arise. Nor has cost recovery ever spurred similar concrete disputes.

The untenable consequences of Petitioners' position, moreover, go beyond how it threatens to paralyze affected owners in emergencies. On the one hand, it would provide a windfall to customers. Customers could avoid paying for services they *in fact received*—like the services the Campbell Plant provided to MISO customers during the May DOE Order—simply because the underlying order was later set aside. And Petitioners' position would perversely incentivize customers receiving benefits under *any* Section 202(c) order to challenge such order—simply

to obtain that windfall and avoid the bill. Those costs instead would fall on generation owners or, if those companies succeeded years later at the Court of Federal Claims, on taxpayers more broadly—who are certainly farther removed than customers from the benefits provided. There is no reason under the sun that Congress would have intended those strange results.

C. The best evidence from historical practice also controverts Petitioners' novel position. In 2002, DOE issued an order determining that an emergency existed on Long Island and directing the Cross-Sound Cable Company, LLC ("CSC") "to operate the Cross-Sound Cable … to transmit and deliver electric capacity and/or energy [when and in such amounts] as may be scheduled and purchased by the Long Island Power Authority (LIPA)." *U.S. Dep't of Energy*, 101 FERC ¶ 61,389 at P 3 (2002) (quoting DOE Order No. 202-02-1). CSC duly ensured the cable was available, incurring costs to do so. But "LIPA was unable ultimately to obtain any service, including any reliability benefits, from the CSC under the Emergency Order," and "LIPA received no use of the CSC during the emergency period."[6]

Although the order provided no concrete benefits after all, FERC did not—as Petitioners' theory would posit—deny CSC recovery on the ground that the order

---

[6] Comments of Long Island Power Authority and LIPA to New York Independent System Operator and ISO-New England Joint Compliance Filing on Protocol for Emergency CSC Operation at 3, *U.S. Dep't of Energy*, Docket No. ER03-246-000 (F.E.R.C. filed Feb. 28, 2003).

proved to be unreasonable or ineffectual. Nor did LIPA endeavor to escape responsibility for CSC's costs by litigating the order's lawfulness, as Petitioners' theory would invite. Instead, DOE referred CSC's compensation to FERC and FERC issued an order approving an uncontested settlement between LIPA and CSC providing for "full compensation" to CSC for its costs.[7]

D. Petitioners ground their theory on a simple, but wrong, claim: Because "FERC granted Consumers' complaint solely on the basis of section 202(c)," Petitioners suggest, vacating the order would necessarily eliminate the authority to approve cost recovery. States Br. 23. But Justice Barrett, in a controlling concurrence, recently explained that this is a fallacy: "[V]acating" one agency action "does not necessarily void decisions made under" it. *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2661 (2025) (Barrett, J., concurring in denial of stay); *see id.* ("vacatur does not necessarily 'eras[e] from legal existence all past adjudications under the vacated rule'" (quoting *D.A.M. v. Barr*, 486 F.Supp.3d 404, 415 (D.D.C. 2020) (bracket in original)).

That generally applicable proposition holds doubly true here given Congress's careful division of authority in Section 202(c)—vesting in DOE power to issue

---

[7] *U.S. Dep't of Energy*, 107 FERC ¶ 61,258 at P 2 (2004); Joint Stipulation of Cross-Sound Cable Company, LLC and Long Island Lighting Company and LIPA Reflecting Agreement on Compensation Under Emergency Order at 2, *U.S. Dep't of Energy*, Docket No. ER03-246-000 (F.E.R.C. filed May 6, 2004).

emergency orders and in FERC power to address compensation disputes. *Supra* Background Part A. Hence, vacating a Section 202(c) order issued by DOE in no way eliminates FERC's separate authority to provide "just and reasonable" "compensation" for services provided "carrying out" that order while it was in effect.

To the extent Petitioners suggest the filed-rate doctrine requires refunds if DOE's order is vacated, States Br. 23, that is wrong too. First, Section 202(c) expressly authorizes retroactive compensation, as Petitioners acknowledge. *See id.* And as just explained, that authority does not vanish simply because DOE's order is vacated. Second, as this Court has explained, there is a "notice exception" to the filed rate doctrine. *W. Deptford Energy, LLC v. FERC*, 766 F.3d 10, 22 (D.C. Cir. 2014). Whatever the ultimate fate of the May DOE Order may be, its issuance provided adequate notice that compensation would be due to Consumers for the continued operation of the Campbell Plant past its planned retirement date.[8]

## CONCLUSION

Consumers respectfully requests that however the Court decides this case, it take into account the considerations described in this brief.

---

[8] *See* JA__ (May DOE Order at 3) ("Rate recovery is available pursuant to 16 U.S.C. § 824a(c)); *see also PJM Interconnection, L.L.C.*, 192 FERC ¶ 61,159 at PP 1, 10, 30 (accepting retroactive effective date for tariff revisions to effectuate Section 202(c) cost recovery, which the applicant justified based on notice exception to filed rate doctrine), *on reh'g*, 193 FERC ¶ 61,229 (2025).

Dated: March 17, 2026

Respectfully submitted,

/s/ *Zachary C. Schauf*
Zachary C. Schauf
Juliana Brint
JENNER & BLOCK LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
zschauf@jenner.com

*Counsel for Consumers Energy Company*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the word limit set forth in Fed. R. App. P. 29(a)(5) because it contains 6,450 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Cir. R. 32(e)(1).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 14 point Times New Roman font for the main text and 14 point Times New Roman font for footnotes.

/s/ *Zachary C. Schauf*

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Zachary C. Schauf*

**ADDENDUM**

# INDEX

U.S. Const. amend. V ................................................................................ Add-1

16 U.S.C. § 824a(c) ................................................................................ Add-1

16 U.S.C. § 824d(a) ................................................................................ Add-3

16 U.S.C. § 824e(b) ................................................................................ Add-3

16 U.S.C. § 825*l* ................................................................................ Add-4

16 U.S.C. § 825*o*-1 ................................................................................ Add-6

42 U.S.C. § 7151(b) ................................................................................ Add-6

42 U.S.C. § 7172(a)(1)(B) ................................................................................ Add-6

10 C.F.R. § 205.370 ................................................................................ Add-7

10 C.F.R. § 205.376 ................................................................................ Add-7

**U.S. Const. Amend. V**

**Amendment V. Grand Jury Indictment for Capital Crimes; Double Jeopardy; Self-Incrimination; Due Process of Law; Takings without Just Compensation**

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

**16 U.S.C. § 824a**

**§ 824a. Interconnection and coordination of facilities; emergencies; transmission to foreign countries**

****

(c) Temporary connection and exchange of facilities during emergency

(1) During the continuance of any war in which the United States is engaged, or whenever the Commission determines that an emergency exists by reason of a sudden increase in the demand for electric energy, or a shortage of electric energy or of facilities for the generation or transmission of electric energy, or of fuel or water for generating facilities, or other causes, the Commission shall have authority, either upon its own motion or upon complaint, with or without notice, hearing, or report, to require by order such temporary connections of facilities and such generation, delivery, interchange, or transmission of electric energy as in its judgment will best meet the emergency and serve the public interest. If the parties affected by such order fail to agree upon the terms of any arrangement between them in carrying out such order, the Commission, after hearing held either before or after such order takes effect, may prescribe by supplemental order such terms as it finds to be just and reasonable, including the compensation or reimbursement which should be paid to or by any such party.

(2) With respect to an order issued under this subsection that may result in a conflict with a requirement of any Federal, State, or local environmental law or regulation, the Commission shall ensure that such order requires generation, delivery, interchange, or transmission of electric energy only during hours necessary to meet the emergency and serve the public interest, and, to the

Add-1

maximum extent practicable, is consistent with any applicable Federal, State, or local environmental law or regulation and minimizes any adverse environmental impacts.

(3) To the extent any omission or action taken by a party, that is necessary to comply with an order issued under this subsection, including any omission or action taken to voluntarily comply with such order, results in noncompliance with, or causes such party to not comply with, any Federal, State, or local environmental law or regulation, such omission or action shall not be considered a violation of such environmental law or regulation, or subject such party to any requirement, civil or criminal liability, or a citizen suit under such environmental law or regulation.

(4)(A) An order issued under this subsection that may result in a conflict with a requirement of any Federal, State, or local environmental law or regulation shall expire not later than 90 days after it is issued. The Commission may renew or reissue such order pursuant to paragraphs (1) and (2) for subsequent periods, not to exceed 90 days for each period, as the Commission determines necessary to meet the emergency and serve the public interest.

(B) In renewing or reissuing an order under subparagraph (A), the Commission shall consult with the primary Federal agency with expertise in the environmental interest protected by such law or regulation, and shall include in any such renewed or reissued order such conditions as such Federal agency determines necessary to minimize any adverse environmental impacts to the extent practicable. The conditions, if any, submitted by such Federal agency shall be made available to the public. The Commission may exclude such a condition from the renewed or reissued order if it determines that such condition would prevent the order from adequately addressing the emergency necessitating such order and provides in the order, or otherwise makes publicly available, an explanation of such determination.

(5) If an order issued under this subsection is subsequently stayed, modified, or set aside by a court pursuant to section 825l of this title or any other provision of law, any omission or action previously taken by a party that was necessary to comply with the order while the order was in effect, including any omission or action taken to voluntarily comply with the order, shall remain subject to paragraph (3).

**\*\*\*\***

Add-2

**16 U.S.C. § 824d**

**§ 824d. Rates and charges; schedules; suspension of new rates; automatic adjustment clauses**

(a) Just and reasonable rates

All rates and charges made, demanded, or received by any public utility for or in connection with the transmission or sale of electric energy subject to the jurisdiction of the Commission, and all rules and regulations affecting or pertaining to such rates or charges shall be just and reasonable, and any such rate or charge that is not just and reasonable is hereby declared to be unlawful.

\*\*\*\*

**16 U.S.C. § 824e**

**§ 824e. Power of Commission to fix rates and charges; determination of cost of production or transmission**

\*\*\*\*

(b) Refund effective date; preferential proceedings; statement of reasons for delay; burden of proof; scope of refund order; refund orders in cases of dilatory behavior; interest

Whenever the Commission institutes a proceeding under this section, the Commission shall establish a refund effective date. In the case of a proceeding instituted on complaint, the refund effective date shall not be earlier than the date of the filing of such complaint nor later than 5 months after the filing of such complaint. In the case of a proceeding instituted by the Commission on its own motion, the refund effective date shall not be earlier than the date of the publication by the Commission of notice of its intention to initiate such proceeding nor later than 5 months after the publication date. Upon institution of a proceeding under this section, the Commission shall give to the decision of such proceeding the same preference as provided under section 824d of this title and otherwise act as speedily as possible. If no final decision is rendered by the conclusion of the 180-day period commencing upon initiation of a proceeding pursuant to this section, the Commission shall state the reasons why it has failed to do so and shall state its best estimate as to when it reasonably expects to make such decision. In any proceeding under this section, the burden of proof to show that any rate, charge, classification, rule, regulation, practice, or contract is unjust, unreasonable, unduly discriminatory,

Add-3

or preferential shall be upon the Commission or the complainant. At the conclusion of any proceeding under this section, the Commission may order refunds of any amounts paid, for the period subsequent to the refund effective date through a date fifteen months after such refund effective date, in excess of those which would have been paid under the just and reasonable rate, charge, classification, rule, regulation, practice, or contract which the Commission orders to be thereafter observed and in force: Provided, That if the proceeding is not concluded within fifteen months after the refund effective date and if the Commission determines at the conclusion of the proceeding that the proceeding was not resolved within the fifteen-month period primarily because of dilatory behavior by the public utility, the Commission may order refunds of any or all amounts paid for the period subsequent to the refund effective date and prior to the conclusion of the proceeding. The refunds shall be made, with interest, to those persons who have paid those rates or charges which are the subject of the proceeding.

**\*\*\*\***

## 16 U.S.C. § 825*l*

### § 825*l*. Review of orders

(a) Application for rehearing; time periods; modification of order

Any person, electric utility, State, municipality, or State commission aggrieved by an order issued by the Commission in a proceeding under this chapter to which such person, electric utility, State, municipality, or State commission is a party may apply for a rehearing within thirty days after the issuance of such order. The application for rehearing shall set forth specifically the ground or grounds upon which such application is based. Upon such application the Commission shall have power to grant or deny rehearing or to abrogate or modify its order without further hearing. Unless the Commission acts upon the application for rehearing within thirty days after it is filed, such application may be deemed to have been denied. No proceeding to review any order of the Commission shall be brought by any entity unless such entity shall have made application to the Commission for a rehearing thereon. Until the record in a proceeding shall have been filed in a court of appeals, as provided in subsection (b), the Commission may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of this chapter.

(b) Judicial review

Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the United States court of appeals for any circuit wherein the licensee or public utility to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part. A copy of such petition shall forthwith be transmitted by the clerk of the court to any member of the Commission and thereupon the Commission shall file with the court the record upon which the order complained of was entered, as provided in section 2112 of Title 28. Upon the filing of such petition such court shall have jurisdiction, which upon the filing of the record with it shall be exclusive, to affirm, modify, or set aside such order in whole or in part. No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do. The finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive. If any party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the proceedings before the Commission, the court may order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. The Commission may modify its findings as to the facts by reason of the additional evidence so taken, and it shall file with the court such modified or new findings which, if supported by substantial evidence, shall be conclusive, and its recommendation, if any, for the modification or setting aside of the original order. The judgment and decree of the court, affirming, modifying, or setting aside, in whole or in part, any such order of the Commission, shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification as provided in section 1254 of Title 28.

(c) Stay of Commission's order

The filing of an application for rehearing under subsection (a) shall not, unless specifically ordered by the Commission, operate as a stay of the Commission's order. The commencement of proceedings under subsection (b) of this section shall not, unless specifically ordered by the court, operate as a stay of the Commission's order.

Add-5

**16 U.S.C.A. § 825*o*-1**

**§ 825*o*-1. Enforcement of certain provisions**

(a) Violations

It shall be unlawful for any person to violate any provision of subchapter II or any rule or order issued under any such provision.

(b) Civil penalties

Any person who violates any provision of subchapter II or any provision of any rule or order thereunder shall be subject to a civil penalty of not more than $1,000,000 for each day that such violation continues. Such penalty shall be assessed by the Commission, after notice and opportunity for public hearing, in accordance with the same provisions as are applicable under section 823b(d) of this title in the case of civil penalties assessed under section 823b of this title. In determining the amount of a proposed penalty, the Commission shall take into consideration the seriousness of the violation and the efforts of such person to remedy the violation in a timely manner.

**42 U.S.C. § 7151**

**§ 7151. General transfers**

****

(b) Except as provided in subchapter IV, there are transferred to, and vested in, the Secretary the function of the Federal Power Commission, or of the members, officers, or components thereof. The Secretary may exercise any power described in section 7172(a)(2) of this title to the extent the Secretary determines such power to be necessary to the exercise of any function within his jurisdiction pursuant to the preceding sentence.

**42 U.S.C. § 7172**

**§ 7172. Jurisdiction of Commission**

(a) Transfer of functions from Federal Power Commission

(1) There are transferred to, and vested in, the Commission the following functions of the Federal Power Commission or of any member of the Commission or any officer or component of the Commission:

Add-6

(A) the investigation, issuance, transfer, renewal, revocation, and enforcement of licenses and permits for the construction, operation, and maintenance of dams, water conduits, reservoirs, powerhouses, transmission lines, or other works for the development and improvement of navigation and for the development and utilization of power across, along, from, or in navigable waters under part I of the Federal Power Act;

(B) the establishment, review, and enforcement of rates and charges for the transmission or sale of electric energy, including determinations on construction work in progress, under part II of the Federal Power Act, and the interconnection, under section 202(b), of such Act, of facilities for the generation, transmission, and sale of electric energy (other than emergency interconnection);

****

## 10 C.F.R. § 205.370

### § 205.370 Applicability.

Sections 202(c) and 202(d) of the Federal Power Act are applicable to any "entity" which owns or operates electric power generation, transmission or distribution facilities. An "entity" is a private or public corporation (utility), a governmental agency, a municipality, a cooperative or a lawful association of the foregoing. Under this section, the DOE has the authority to order the temporary connection of facilities, or the generation or delivery of electricity, which it deems necessary to alleviate an emergency. Such orders shall be effective for the time specified and will be subject to the terms and conditions the DOE specifies. The DOE retains the right to cancel, modify or otherwise change any order, with or without notice, hearing, or report. Requests for action under these regulations will be accepted from any "entity," State Public Utility Commission, State Energy Agency, or State Governor. Actions under these regulations also may be initiated by the DOE on its own motion. Orders under this authority may be made effective without prior notice.

## 10 C.F.R. § 205.376

### § 205.376 Rates and charges.

The applicant and the generating or transmitting systems from which emergency service is requested are encouraged to utilize the rates and charges contained in approved existing rate schedules or to negotiate mutually satisfactory rates for the proposed transactions. In the event that the DOE determines that an emergency

Add-7

exists under section 202(c), and the "entities" are unable to agree on the rates to be charged, the DOE shall prescribe the conditions of service and refer the rate issues to the Federal Energy Regulatory Commission for determination by that agency in accordance with its standards and procedures.